**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| **US FOODS, INC.,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| **v.** | ) | **Case No. 17-CV-07526** |
| | ) | |
| **BISHOK LLC d/b/a MONTANA'S RIB &** | ) | |
| **CHOP HOUSE; MRCH SOUTHPOINTE, LLC** | ) | |
| **d/b/a MONTANA'S RIB AND CHOP HOUSE;** | ) | |
| **T.G. HOLDINGS, LLC d/b/a MONTANA'S RIB** | ) | |
| **AND CHOP HOUSE; PAUL E. SHOK,** | ) | |
| **individually; and CHARLES A. BISH, JR.,** | ) | |
| **individually,** | ) | |
| | ) | |
| *Defendants.* | ) | |
| ———————————————————— | ) | |

**DEFENDANTS' ANSWER AND DEFENSES
TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Bishok LLC d/b/a Montana's Rib & Chop House; MRCH Southpointe, LLC

d/b/a Montana's Rib and Chop House; T.G. Holdings, LLC d/b/a Montana's Rib and Chop

House; Paul E. Shok, and Charles A. Bish, Jr., by and through counsel, respectfully submit their

answer and Defenses to the First Amended Complaint ("FAC") filed by Plaintiff US Foods, Inc.

("US Foods" or "Plaintiff") as follows:

**FAC ¶ 1:**

**Plaintiff US Foods is a Delaware corporation with its principal place of business at
9399 West Higgins Road, Suite 600, Rosemont, Illinois 60018. US Foods is registered as a
foreign corporation licensed to do business in the State of Illinois. US Foods is one of
America's leading foodservice distributors to restaurants, healthcare and hospitality
facilities, government operations and educational institutions across the country,
including in the State of Illinois.**

**ANSWER:**

Admitted.

**FAC ¶ 2:**

Defendant Bishok LLC d/b/a Montana's Rib and Chop House ("Bishok") is registered as a limited liability company with citizenship in the State of Pennsylvania with a principal place of business at 11142 Highline Drive-Perry Highway, Meadville, Pennsylvania16316. Upon information and belief, Bishok has three (3) Members[1]: Charles A. Bish, Jr. ("Bish"), Thomas Ristvey, Jr. ("Ristvey"), and Paul E. Shok ("Shok"). Bish, Ristvey and Shok are all citizens of Pennsylvania. Bish is domiciled at 10132 Nancy Drive, Meadville, Pennsylvania 16335. Ristvey is domiciled at 768 Lorenwood Drive, Hermitage, Pennsylvania 16148. Shok is domiciled at 11230 Lakeshore Drive, Conneaut Lake, Pennsylvania 16316.

**ANSWER:**

Admitted only that Bishok is a Pennsylvania LLC, that Bish and Shok are members, and that the addresses for Bish and Shok are correct. The address alleged for Bish is incorrect and denied. Denied that Thomas Ristvey, Jr. is a member of Bishok. Denied that all of the members of Bishok are listed or included in Paragraph 2. Therefore, Plaintiff has failed to sufficiently plead diversity jurisdiction.

**FAC ¶ 3:**

Defendant T.G. Holdings, LLC d/b/a Montana's Rib and Chop House ("T.G. Holdings") is registered as a limited liability company with citizenship in the State of Pennsylvania with a principal place of business at 296 Chestnut Street, Meadville, Pennsylvania 16335. Upon information and belief, T.G. Holdings has three (3) Members[2]: Charles A. Bish, Jr. ("Bish"), Thomas Ristvey, Jr. ("Ristvey"), and Paul E. Shok ("Shok"). Bish, Ristvey and Shok are all citizens of Pennsylvania. Bish is domiciled at 10132 Nancy Drive, Meadville, Pennsylvania 16335. Ristvey is domiciled at 768 Lorenwood Drive, Hermitage, Pennsylvania 16148. Shok is domiciled at 11230 Lakeshore Drive, Conneaut Lake, Pennsylvania 16316.

**ANSWER:**

Admitted that TG Holdings is a Pennsylvania LLC and that its address is pled

---

[1] Bishok's Certificate of Organization lists Robert D. Griewahn, Jr. ("Griewahn") as an organizer but not a Member. Griewahn is a citizen of Virginia domiciled at 2025 North Kentucky Street, Arlington, Virginia 22205.

[2] T.G. Holding's Certificate of Organization lists Tanya Bish ("T. Bish") and Deborah Jo Ristvey ("D. Ristvey") as organizers but not Members. T. Bish is a citizen of Pennsylvania domiciled at 10132 Nancy Drive, Meadville, Pennsylvania 16335. D. Ristvey is a citizen of Pennsylvania domiciled at 768 Lorenwood, Hermitage, PA 16148.

accurately.  Admitted that Bish is a member. Admitted that Bish's address is correct.  Denied

that Shok or Ristvey are members.  Denied that all of the members of TG holdings are listed or

included in Paragraph 3.  Therefore, Plaintiff has failed to sufficiently plead diversity

jurisdiction.

**FAC ¶ 4:**

**Defendant MRCH Southpointe, LLC d/b/a Montana's Rib and Chop House ("MRCH") is registered as a limited liability company with citizenship in the State of Pennsylvania with a principal place of business at 296 Chestnut Street, Meadville, Pennsylvania 16335. Upon information and belief, MRCH has three (3) Members: Charles A. Bish, Jr. ("Bish"), Thomas Ristvey, Jr. ("Ristvey"), and Paul E. Shok ("Shok"). Bish, Ristvey and Shok are all citizens of Pennsylvania. Bish is domiciled at 10132 Nancy Drive, Meadville, Pennsylvania 16335. Ristvey is domiciled at 768 Lorenwood Drive, Hermitage, Pennsylvania 16148. Shok is domiciled at 11230 Lakeshore Drive, Conneaut Lake, Pennsylvania 16316.**

**ANSWER:**

Admitted only that MRCH is a Pennsylvania LLC, that Bish and Shok are members, and

that the addresses are correct.  Denied that Thomas Ristvey, Jr. is a member of MRCH.  Denied

that all of the members of MRCH are listed or included in Paragraph 2.  Therefore, Plaintiff has

failed to sufficiently plead diversity jurisdiction.

**FAC ¶ 5:**

**Defendant Shok is the Managing Member of MRCH, and a Member of Bish and T.G. Holdings. Shok is a citizen of Pennsylvania domiciled at 11230 Lakeshore Drive, Conneaut Lake, Pennsylvania 16316.**

**ANSWER:**

Admitted only that Shok's address is pled correctly and that he is a member of Bish and

MRCH.  Otherwise denied.

**FAC ¶ 6:**

**Defendant Bish is a Member of Bishok, MRCH and T.G. Holdings. Bish is a citizen of Pennsylvania domiciled at 10132 Nancy Drive, Meadville, Pennsylvania 16335.**

3

**ANSWER:**

Admitted.

**FAC ¶ 7:**

US Foods brings breach of contract, statement on account, goods sold and unjust enrichment claims pursuant to Illinois common law.

**ANSWER:**

Admitted only that US Food attempts to plead the specified claims. Otherwise denied.

**FAC ¶ 8:**

This Court has jurisdiction over this matter and these parties pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00 and there is diversity among the parties because Plaintiff is a citizen of Illinois and all Defendants are citizens of Pennsylvania.

**ANSWER:**

Denied. Plaintiff has failed to properly plead diversity jurisdiction because it has not

pled the citizenship of all of the members of the three LLCs.

**FAC ¶ 9:**

Venue is proper because substantial performance under the Promissory Note ("Note") took place in the Northern District of Illinois and because Section 11 of the Note includes a governing law provision stating that all actions and proceedings arising out of or relating to the Note shall be heard and determined in a state or federal court in Illinois. A true and correct copy of the Note is attached hereto as Exhibit A.

**ANSWER:**

Admitted only that the Note was signed and, if it is valid, it is the best evidence of its

own content and legal effect. Otherwise denied.

**FAC ¶ 10:**

From as early as 2009, US Foods supplied various food, food-related products and services to Defendants.

4

**ANSWER:**

   Admitted.

**FAC ¶ 11:**

   In connection with these transactions, Defendants entered into certain Customer Account Applications (collectively the "Agreements," and each individually, the "Agreement"). True and correct copies of the Agreements are attached hereto as Exhibits B1-B3 and incorporated herein by reference.

**ANSWER:**

   Admitted only that the attached copies of the Agreements are authentic and genuine

and that the LLC Defendants who actually signed them are parties to them. Otherwise denied.

**FAC ¶ 12:**

   Pursuant to the Agreements, Defendants agreed to be bound by the terms of the Agreements, invoices and other documents furnished by US Foods, and to pay all charges set forth on each invoice pursuant to the credit terms on the invoices. (See Exhibits B1-B3).

**ANSWER:**

   Admitted only that the attached copies of the Agreements are authentic and genuine,

are the best evidence of their own contents, and that the LLC Defendants who actually signed

them are parties to them. Otherwise denied.

**FAC ¶ 13:**

   Defendants also agreed to pay all costs, expenses and fees, including attorneys' fees which may be incurred by US Foods in enforcing or protecting its rights under the Agreements. (Exhibits B1-B3).

**ANSWER:**

   Admitted only that the attached copies of the Agreements are authentic and genuine,

are the best evidence of their own contents, and that the LLC Defendants who actually signed

them are parties to them.  Otherwise denied.

**FAC ¶ 14:**

      **Defendants also agreed to pay interest in the amount of 1.5% per month on any payment past due until collected. (Exhibits B1-B3).**

**ANSWER:**

      Admitted only that the attached copies of the Agreements are authentic and genuine, are the best evidence of their own contents, and that the LLC Defendants who actually signed them are parties to them.  Otherwise denied.

**FAC ¶ 15:**

      **Bishok's Agreement includes a personal guaranty (the "Bish Guaranty") executed by Bish ("Guarantor"). (See Exhibit B1).**

**ANSWER:**

      Admitted only that the attached copies of the Agreements are authentic and genuine, are the best evidence of their own contents, and that the LLC Defendants who actually signed them are parties to them.  Otherwise denied.

**FAC ¶ 16:**

      **MRCH's Agreement also includes personal guaranties (the "Bish-Shok Guaranty") executed by Bish and Shok (collectively, the "Guarantors," and individually the "Guarantor"). (See Exhibit B2).**

**ANSWER:**

      Admitted only that the attached copies of the Agreements are authentic and genuine, are the best evidence of their own contents, and that the LLC Defendants who actually signed them are parties to them.  Otherwise denied.

**FAC ¶ 17:**

      **Additionally, T.G. Holdings' Agreement includes a personal guaranty (the "Bish 2 Guaranty") executed by Bish. (See Exhibit B3).**

**ANSWER:**

Admitted only that the attached copies of the Agreements are authentic and genuine,

are the best evidence of their own contents, and that the LLC Defendants who actually signed

them are parties to them.  Otherwise denied.

**FAC ¶ 18:**

Pursuant to the Bish Guaranty, Bish 2 Guaranty and Bish-Shok Guaranty, Guarantors Bish and Shok "personally and unconditionally" guarantied payment of all amounts then owing, and thereafter owed by Defendants Bishok, MRCH and T.G. Holdings to US Foods. (Exhibit B1-B3).

**ANSWER:**

Admitted only that the attached copies of the Agreements are authentic and genuine,

are the best evidence of their own contents, and that the LLC Defendants who actually signed

them are parties to them.  Otherwise denied.

**FAC ¶ 19:**

Further, in the event of a default by Defendants Bishok, MRCH and/or T.G. Holdings, US Foods has the right to proceed directly against Guarantors Bish and/or Shok without first exhausting other remedies. (Exhibit B1-B3).

**ANSWER:**

Admitted only that the attached copies of the Agreements are authentic and genuine,

are the best evidence of their own contents, and that the LLC Defendants who actually signed

them are parties to them.  Otherwise denied.

**FAC ¶ 20:**

Defendants Bishok, T.G. Holdings and MRCH ordered, received, and accepted delivery of goods and services from US Foods as reflected on invoices sent by US Foods to Defendants Bishok, T.G. Holdings and MRCH.

**ANSWER:**

Admitted. However, Defendants were not then aware of the price-gouging and price

manipulation by Plaintiff.

**FAC ¶ 21:**

**Pursuant to the payment terms contained in the Agreements and the invoices, Defendants were obligated to make payments to US Foods in the full invoice amounts for goods and services received. (Exhibits B1-B3).**

**ANSWER:**

Admitted only that the attached copies of the Agreements are authentic and genuine,

are the best evidence of their own contents, and that the LLC Defendants who actually signed

them are parties to them. Otherwise denied.

**FAC ¶ 22:**

**US Foods performed all of its obligations by supplying Defendants Bishok, T.G. Holdings and MRCH with the purchased goods and services and submitting invoices to Defendants Bishok, T.G. Holdings and MRCH.**

**ANSWER:**

Denied. US Foods engaged in price manipulation and price gouging which breached at

least the implied covenant of good faith and fair dealing by billing Defendants on a cost-plus

basis at the highest recent prices and costs rather than the actual prices and costs.

**FAC ¶ 23:**

**In or around February 2017, Defendants Bishok, T.G. Holdings and MRCH collectively had a balance due and owing to US Foods in the amount of approximately $804,531.41, for unpaid invoices dated on or before, February 28, 2017 ("Unpaid Invoices"). A summary of Unpaid Invoices for Defendants Bishok, T.G. Holdings and MRCH are attached hereto and incorporated herein as Exhibit C1-C3.**

**ANSWER:**

Denied. US Foods engaged in price manipulation and price gouging which breached at

least the implied covenant of good faith and fair dealing by billing Defendants on a cost-plus

basis at the highest recent prices and costs rather than the actual prices and costs.

**FAC ¶ 24:**

**In settlement of the Unpaid Invoices, on or around March 3, 2017, Defendants Bishok, T.G. Holdings and MRCH executed the Note, in which Defendants Bishok, T.G. Holdings and MRCH promised to pay US Foods the principal sum of $804,531.41 pursuant to an agreed upon payment schedule, plus 6% interest per year on any unpaid principal balance. (See Exhibit A).**

**ANSWER:**

Admitted only that the Note was signed and is the best evidence of its own contents.

Denied that the Note is valid or enforceable.

**FAC ¶ 25:**

**Under the Note, US Foods retained all of its rights and remedies under the Agreements, including the right to proceed directly against Guarantors for the Defendants Bishok, T.G. Holdings and MRCH's debt. (See Exhibit A at § 7.1).**

**ANSWER:**

Admitted only that the Note was signed and is the best evidence of its own

contents. Denied that the Note is valid or enforceable.

**FAC ¶ 26:**

**Pursuant to the Note, Defendants Bishok, T.G. Holdings and MRCH agreed to pay any and all costs, expenses and fees, including attorneys' fees which may be incurred by US Foods in enforcing or protecting its rights under the Note, including interest at the rate of 10% per year for all costs, expenses and fees paid by US Foods. (Exhibit A at § 6).**

**ANSWER:**

Admitted only that the Note was signed and is the best evidence of its own contents.

Denied that the Note is valid or enforceable.

**FAC ¶ 27:**

**Section 5 of the Note reads as follows: "Events of Default; Acceleration. Each of the following shall constitute an event of default under the Note . . . (i) any payment obligation to [US Foods] not made when due . . . (iii) Maker shall (C) admit in writing its**

*inability to pay its debts as they mature.*" **(Emphasis added). (Exhibit A at § 5).**

**ANSWER:**

    Admitted only that the Note was signed and is the best evidence of its own contents.

Denied that the Note is valid or enforceable.

**FAC ¶ 28:**

    **Pursuant to the Note, "upon the occurrence of an Event of Default, the unpaid principal balance . . . shall automatically bear interest at the rate of twenty percent per year, in addition to the 6% yearly interest, from the date the Event of Default occurs until the default is cured." (Exhibit A at§ 6).**

**ANSWER:**

    Admitted only that the Note was signed and is the best evidence of its own contents.

Denied that the Note is valid or enforceable.

**FAC ¶ 29:**

    **On September 7, 2017, Bish sent US Foods a letter (the "September 7, 2017 Letter") via electronic mail, notifying US Foods of Defendants Bishok, T.G. Holdings and MRCH's anticipated default of the Note. A true and correct copy of the September 7, 2017 Letter is attached hereto as Exhibit D.**

**ANSWER:**

    Admitted only that the attached letter was sent and is the best evidence of its own content. Otherwise denied. Defendants were only suggesting and requesting a brief payment hiatus in light of a temporary unforeseen reduction in revenues.

**FAC ¶ 30:**

    **On September 8, 2017, Defendants Bishok, T.G. Holdings and MRCH failed to make their scheduled payment (the "Default"). (Exhibit A, Ex. A).**

**ANSWER:**

    Admitted. Defendants were only suggesting and requesting a brief payment hiatus in

light of a temporary unforeseen reduction in revenues.

**FAC ¶ 31:**

      **On September 12, 2017, US Foods sent a letter (the "September 12, 2017 Letter") to Defendant Bish notifying him that the indebtedness in the aggregate amount of $829,719.011 remained due and owing. A true and correct copy of the September 12, 2017 Letter is attached hereto as Exhibit E.**

**ANSWER:**

      Denied for lack of sufficient knowledge and information.   Defendants do not recall

having received the referenced letter.

**FAC ¶ 32:**

      **Pursuant to the terms of the Note, the September 7, 2017 Letter and Defendants subsequent Default constitute Events of Default, rendering the Note "together with any Additional Indebtedness immediately due and payable." (Exhibit A at §§ 5(i), 5(iii)(C)).**

**ANSWER:**

      Admitted only that the Note was signed and is the best evidence of its own contents.

Denied that the Note is valid or enforceable.

**FAC ¶ 33:**

    **As of the date of this Complaint, Defendants collectively owe US Foods a total of approximately $829,719.01 exclusive of interest, costs and fees.**

**ANSWER:**

      Admitted only as of the date the FAC was filed.  Denied as of the present time.

**FAC ¶ 34:**

      **As of the date of the filing of this Complaint, US Foods has not received payment in full for the amounts owed under the Note.**

**ANSWER:**

      Admitted as of the time the FAC was filed.  However, payments have since been made.

**FAC ¶ 35:**

US Foods incorporates and re-alleges each and every one of the allegations set forth in paragraphs 1 through 33 above as though fully set forth herein.

**ANSWER:**

Defendants incorporate by reference their prior answers and their defenses.

**FAC ¶ 36:**

Defendants Bishok, T.G. Holdings and MRCH agreed to abide by the terms of the Agreements and invoices under which US Foods supplied goods and services to Defendants Bishok, T.G. Holdings and MRCH.

**ANSWER:**

Admitted only that the Agreements were signed and are the best evidence of their own content. Otherwise denied.

**FAC ¶ 37:**

US Foods fully performed its obligations, including supplying all required goods and services.

**ANSWER:**

Denied. US Foods engaged in price manipulation and price gouging which breached at least the implied covenant of good faith and fair dealing by billing Defendants on a cost-plus basis at the highest recent prices and costs rather than the actual prices and costs.

**FAC ¶ 38:**

Defendants Bishok, T.G. Holdings and MRCH accepted all goods and services supplied by US Foods. (See Exhibit B1-B3).

**ANSWER:**

Admitted that they were accepted only because Defendants did not then know about the price manipulation and price gouging. Otherwise denied.

**FAC ¶ 39:**

US Foods submitted invoices to Defendants Bishok, T.G. Holdings and MRCH for the goods and services supplied to them. (<u>See</u> Exhibit C1-C3).

**<u>ANSWER</u>:**

Admitted.

**FAC ¶ 40:**

Defendants Bishok, T.G. Holdings and MRCH failed to pay US Foods the outstanding balance owed.

**<u>ANSWER</u>:**

Admitted only that Defendants have not fully and timely paid the entire amount billed

by Plaintiff, which was inflated and inaccurate due to price gouging and price manipulation.

Otherwise denied.

**FAC ¶ 41:**

On or around March 3, 2017, Defendants Bishok, T.G. Holdings and MRCH executed the Note to US Foods in the principal amount of $804,531.41, representing the amount due and owing to US Foods for certain goods and services supplied to Defendants Bishok, T.G. Holdings and MRCH. (<u>See</u> Exhibit A).

**<u>ANSWER</u>:**

Admitted only that the Note was signed and is the best evidence of its own contents.

Denied that the amount was due and owing. Otherwise denied.

**FAC ¶ 42:**

Defendants Bishok, T.G. Holdings and MRCH sent US Foods the September 7, 2017 Letter informing US Foods of their anticipated default of their payment obligations under the Note. (Exhibit D).

**<u>ANSWER</u>**

Admitted only that the letter was signed and is the best evidence of its own content.

Denied that the balance stated is accurate. Otherwise denied.

**FAC ¶ 43:**

      **Subsequently, on September 8, 2017, Defendants Bishok, T.G. Holdings and MRCH failed to tender payment to US Foods pursuant to the Note's payment schedule. (Exhibit A, Exhibit B).**

**ANSWER:**

      Admitted only that not all amounts billed were payed when demanded. Otherwise

denied.

**FAC ¶ 44:**

      **US Foods sent the September 12, 2017 Letter to Defendant Bish notifying him that the indebtedness in the aggregate amount of $829,719.01 remained due and owing. (Exhibit E).**

**ANSWER:**

      Denied for lack of sufficient knowledge and information. Otherwise denied. Denied

that the amount claimed is due and owing. Defendants do not recall having received this letter.

Otherwise denied.

**FAC ¶ 45:**

      **Pursuant to the terms of the Note, the September 7, 2017 Letter and the subsequent Default constitute Events of Default. (Exhibit A at § 5).**

**ANSWER:**

      Admitted only that the Note was signed and is the best evidence of its own contents.

Otherwise denied.

**FAC ¶ 46:**

      **Due to Defendants Bishok, T.G. Holdings and MRCH's default, the sums due under the Note, together with any Additional Indebtedness, is immediately due and payable. (Exhibit A at § 5).**

**ANSWER:**

Admitted that the Note was signed and is the best evidence of its own content. Denied that the Note is valid or enforceable. Otherwise denied.

**FAC ¶ 47:**

**As a direct and proximate result of the default, US Foods has suffered damages. The total amount currently due and owing from Defendants Bishok, T.G. Holdings and MRCH is $829,719.01, exclusive of costs and fees. (Exhibit C1).**

**ANSWER:**

Denied.

**FAC ¶ 48:**

**US Foods has been required to retain legal counsel for the prosecution of this action and its efforts to recover the amounts due and owing to US Foods, for which is it entitled to recover its attorneys' fees and litigation expenses under the Note. (See Exhibit A, § 6).**

**ANSWER:**

Admitted only that the Note was signed and is the best evidence of its own content, if it were valid and enforceable. Otherwise denied. Defendants requested only a brief payment hiatus due to unforeseen revenue decreases resulting from their re-branding efforts.

**FAC ¶ 49:**

**US Foods incorporates and re-alleges each and every one of the allegations set forth in paragraphs 1 through 33 above as though fully set forth herein.**

**ANSWER:**

Defendants incorporate by reference their Defenses and their prior Answers.

**FAC ¶ 50:**

**Defendants Bishok, T.G. Holdings and MRCH sent US Foods the September 7, 2017 Letter informing US Foods of their anticipated default of their payment obligations under the Note. (Exhibit D).**

**ANSWER:**

Admitted only that the letter was sent and is the best evidence of its own content.

Otherwise denied.  Defendants were merely asking for a brief payment hiatus due to an

unforeseen temporary reduction in revenues.

**FAC ¶ 51:**

 **Subsequently, on September 8, 2017, Defendants Bishok, T.G. Holdings  and MRCH failed to tender payment to US Foods pursuant to the Note's payment schedule. (Exhibit A, Exhibit B).**

**ANSWER:**

 Admitted.  Denied that that the Note is valid or enforceable.

**FAC ¶ 52:**

 **US Foods sent September 12, 2017 Letter to Defendant Bish notifying him that the indebtedness in the aggregate amount of $829,719.01 remained due and owing. (Exhibit E).**

**ANSWER:**

 Denied for lack of sufficient knowledge and information.  Otherwise denied.  Denied

that the amount claimed is due and owing.  Defendants do not recall having received this letter.

**FAC ¶ 53:**

 **Pursuant to the Note, the September 7, 2017 Letter and the subsequent Default constitute Events of Default. (Exhibit A at §§ 5(i), 5(iii)(C)).**

**ANSWER:**

 Admitted only that the Note was signed and is the best evidence of its own content, if it

were valid and enforceable.  Otherwise denied.

**FAC ¶ 54:**

 **Due to Defendants Bishok, T.G. Holdings and MRCH's default, the sums due under the Note together with any Additional Indebtedness is immediately due and payable. (Exhibit A § 5).**
**ANSWER:**

 Admitted only that the Note was signed and is the best evidence of its own content, if it

were valid and enforceable.  Otherwise denied.

**FAC ¶ 55:**

**Guarantors Bish and Shok executed the Bish-Shok Guaranty, unconditionally guaranteeing all of Defendant MRCH's payment obligations to US Foods. (Exhibit B2).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content.

Otherwise denied.  Defendants did not understand the guaranty to apply to promissory notes

and future contracts, but only to the original contract and invoices related thereto for the

particular company whose application was signed.

**FAC ¶ 56:**

**The Bish-Shok Guaranty imposes liability on Guarantors Bish and Shok for Defendant MRCH's payment obligations under the Note. (Exhibit B2).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content.

Otherwise denied.  Defendants did not understand the guaranty to apply to promissory notes

and future contracts, but only to the original contract and invoices related thereto for the

particular company whose application was guaranteed.

**FAC ¶ 57:**

**Guarantors Bish and Shok's obligations include, but are not limited to, payment of the debt, interest and the costs of enforcement of Defendant MRCH's obligations, including reasonable attorneys' fees. (Exhibit B2; See Exhibit A §§ 5-6).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content.

Otherwise denied.  Defendants did not understand the guaranty to apply to promissory notes

and future contracts, but only to the original contract and invoices related thereto for the

17

particular company whose application was guaranteed.

**FAC ¶ 58:**

    **The Bish-Shok Guaranty further provides that US Foods has the right to proceed directly against Guarantors Bish and Shok to collect and recover the full amount of the indebtedness. (Exhibit B2).**

**ANSWER:**

    Admitted only that the guaranty was signed and is the best evidence of its own content.

Otherwise denied.  Defendants did not understand the guaranty to apply to promissory notes

and future contracts, but only to the original contract and invoices related thereto for the

particular company whose application was guaranteed.

**FAC ¶ 59:**

    **Guarantors Bish and Shok have failed to perform their duties and obligations under the Bish-Shok Guaranty.**

**ANSWER:**

    Admitted only that not all sums billed have been paid as of yet.  Otherwise denied.

**FAC ¶ 60:**

    **By refusing to pay the indebtedness, Guarantors Bish and Shok have breached the Bish-Shok Guaranty. (Exhibit B2).**

**ANSWER:**

    Admitted only that not all sums billed have been paid.  Otherwise denied.

**FAC ¶ 61:**

    **US Foods has been damaged in the amount of $829,719.01, exclusive of interest, costs and fees. (<u>See</u> Exhibit A).**

**ANSWER:**

    Admitted only that not all sums billed have been paid.  Otherwise denied.

**FAC ¶ 62:**

US Foods incorporates and re-alleges each and every one of the allegations set forth in paragraphs 1 through 33 above as though fully set forth herein.

**ANSWER:**

Defendants incorporate by reference their defenses and their prior answers.

**FAC ¶ 63:**

Defendants Bishok, T.G. Holdings and MRCH sent US Foods the September 7, 2017 Letter informing US Foods of their anticipated default of their payment obligations under the Note. (Exhibit D).

**ANSWER:**

Admitted only that the letter was sent and is the best evidence of its own content.

Otherwise denied. Defendants only asked for a brief payment hiatus due to an unexpected and

temporary reduction in revenues.

**FAC ¶ 64:**

Subsequently, on September 8, 2017, Defendants Bishok, T.G. Holdings and MRCH failed to tender payment to US Foods pursuant to the Note's payment schedule. (Exhibit A, Exhibit B).
**ANSWER:**

Admitted only that not all sums billed have been paid. Otherwise denied.

**FAC ¶ 65:**

US Foods sent September 12, 2017 Letter to Defendant Bish notifying him that the indebtedness in the aggregate amount of $829,719.01 remained due and owing. (Exhibit E).

**ANSWER:**

Denied for lack of sufficient knowledge and information. Otherwise denied. Denied

that the amount claimed is due and owing. Defendants do not recall having received this letter.

**FAC ¶ 66:**

**Pursuant to the Note, the September 7, 2017 Letter and subsequent Default constitute Events of Default. (Exhibit A at § 5).**

**ANSWER:**

Admitted only that the Note was signed and is the best evidence of its own content, if it were valid and enforceable. Otherwise denied.

**FAC ¶ 67:**

**Due to Defendants Bishok, T.G. Holdings and MRCH's default, the sums due under the Note together with any Additional Indebtedness is immediately due and payable. (Exhibit A at § 5).**

**ANSWER:**

Admitted only that not all sums billed have been paid. Otherwise denied.

**FAC ¶ 68:**

**Guarantor Bish executed the Bish Guaranty, unconditionally guaranteeing all of Defendant Bishok's payment obligations to US Foods. (Exhibit B1).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was guaranteed.

**FAC ¶ 69:**

**The Bish Guaranty imposes liability on Guarantor Bish for Defendant Bishok's payment obligations under the Note. (Exhibit B1).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes

and future contracts, but only to the original contract and invoices related thereto for the

particular company whose application was guaranteed.

**FAC ¶ 70:**

**Guarantor Bish's obligations include, but are not limited to, payment of the debt, interest and the costs of enforcement of Defendant Bishok's obligations, including reasonable attorneys' fees. (Exhibit B1; <u>See</u> Exhibit A at §§ 5-6).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content.

Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes

and future contracts, but only to the original contract and invoices related thereto for the

particular company whose application was guaranteed.

**FAC ¶ 71:**

**The Bish Guaranty further provides that US Foods has the right to proceed directly against Guarantor Bish to collect and recover the full amount of the indebtedness. (Exhibits B2).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content.

Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes

and future contracts, but only to the original contract and invoices related thereto for the

particular company whose application was guaranteed.

**FAC ¶ 72:**

**Guarantor Bish has failed to perform his duties and obligations under the Bish Guaranty.**

**ANSWER:**

Admitted only that not all amounts billed have been paid as of yet. Otherwise denied.

Defendants did not understand the guaranty to apply to promissory notes and future contracts,

but only to the original contract and invoices related thereto for the particular company whose application was guaranteed.

**FAC ¶ 73:**

**By refusing to pay the indebtedness, Guarantor Bish has breached the Bish Guaranty. (Exhibits B2).**

**ANSWER:**

Admitted only that not all amounts billed have been paid as of yet. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was guaranteed.

**FAC ¶ 74:**

**US Foods has been damaged in the amount of $829,719.01, exclusive of costs and fees. (See Exhibit A).**

**ANSWER:**

Admitted only that not all amounts billed have been paid as of yet. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was guaranteed.

**FAC ¶ 75:**

**US Foods incorporates and re-alleges each and every one of the allegations set forth in paragraphs 1 through 33 above as though fully set forth herein.**

**ANSWER:**

Defendants incorporate by reference their Defenses and all prior Answers.

**FAC ¶ 76:**

**Defendants Bishok, T.G. Holdings and MRCH sent US Foods the September 7, 2017 Letter informing US Foods of their anticipated default of their payment obligations under the Note. (Exhibit D).**

**ANSWER:**

Admitted only that the letter was sent and is the best evidence of its own content. Otherwise denied. Defendants only asked for a brief payment hiatus due to an unexpected and temporary reduction in revenues.

**FAC ¶ 77:**

**Subsequently, on September 8, 2017, Defendants Bishok, T.G. Holdings and MRCH failed to tender payment to US Foods pursuant to the Note's payment schedule. (Exhibit A, Exhibit B).**

**ANSWER:**

Admitted only that Defendants sought a brief payment hiatus due to an unexpected and temporary decrease in revenues. Otherwise denied.

**FAC ¶ 78:**

**US Foods sent September 12, 2017 Letter to Defendant Bish notifying him that the indebtedness in the aggregate amount of $829,719.01 remained due and owing. (Exhibit E).**

**ANSWER:**

Denied for lack of sufficient knowledge and information. Otherwise denied. Denied that the amount claimed is due and owing. Defendants do not recall having received this letter.

**FAC ¶ 79:**

**Pursuant to the Note, the September 7, 2017 Letter and the subsequent Default constitute Events of Default. (Exhibit A at § 5).**

**ANSWER:**

Admitted only that the Note was signed and is the best evidence of its own content, if it were valid and enforceable. Otherwise denied.

**FAC ¶ 80:**

Due to Defendants Bishok, T.G. Holdings and MRCH's default, the sums due under the Note together with any Additional Indebtedness is immediately due and payable. (Exhibit A at § 5).

**ANSWER:**

Admitted only that not all sums billed have been paid. Otherwise denied.

**FAC ¶ 81:**

Guarantor Bish executed the Bish 2 Guaranty, unconditionally guaranteeing all of Defendant T.G. Holdings' payment obligations to US Foods. (Exhibit B3).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content.

Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes

and future contracts, but only to the original contract and invoices related thereto for the

particular company whose application was signed.

**FAC ¶ 82:**

The Bish 2 Guaranty imposes liability on Guarantor Bish for Defendant T.G. Holdings' payment obligations under the Note. (Exhibit B3).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content.

Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes

and future contracts, but only to the original contract and invoices related thereto for the

particular company whose application was signed.

**FAC ¶ 83:**

Guarantor Bish's obligations include, but are not limited to, payment of the debt, interest and the costs of enforcement of Defendant T.G. Holdings' obligations, including

**reasonable attorneys' fees. (Exhibit B3; <u>See</u> Exhibit A at §§ 5-6).**

**<u>ANSWER</u>:**

      Admitted only that the guaranty was signed and is the best evidence of its own content.

Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes

and future contracts, but only to the original contract and invoices related thereto for the

particular company whose application was signed.

**<u>FAC ¶ 84</u>:**

      **The Bish 2 Guaranty further provides that US Foods has the right to proceed directly against Guarantor Bish to collect and recover the full amount of the indebtedness. (Exhibits B3).**

**<u>ANSWER</u>:**

      Admitted only that the guaranty was signed and is the best evidence of its own content.

Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes

and future contracts, but only to the original contract and invoices related thereto for the

particular company whose application was signed.

**<u>FAC ¶ 85</u>:**

      **Guarantor Bish has failed to perform his duties and obligations under the Bish 2 Guaranty.**

**<u>ANSWER</u>:**

      Admitted only that not all sums billed by Plaintiff have been paid. Otherwise denied.

**<u>FAC ¶ 86</u>:**

      **By refusing to pay the indebtedness, Guarantor Bish has breached the Bish 2 Guaranty. (Exhibits B3).**

**<u>ANSWER</u>:**

      Admitted only that not all sums billed by Plaintiff have been paid. Otherwise denied.

**FAC ¶ 87:**

US Foods has been damaged in the amount of $829,719.01, exclusive of interest, costs and fees. (See Exhibit A).

**ANSWER:**

Denied.   Defendants hope and plan to pay off the full balance due pursuant to a payment

plan arrangement. Payments have been made since the FAC was filed.

**FAC ¶ 88:**

US Foods incorporates and re-alleges each and every one of the allegations set forth in paragraphs 1 through 33 above as though fully set forth herein.

**ANSWER:**

Defendants incorporate by reference their Defenses and all prior Answers.

**FAC ¶ 89:**

Before the institution of this action, US Foods and Defendant Bishok had an on-going business relationship in which Defendant Bishok ordered goods and services from US Foods, for a period of time.

**ANSWER:**

 Admitted.

**FAC ¶ 90:**

US Foods supplied goods and services to Defendant Bishok as evidenced by the invoices US Foods submitted to Defendant Bishok for the goods and services supplied. The invoices were delivered to Defendant Bishok in accordance with US Foods' normal accounting procedures.

**ANSWER:**

Denied.  The invoices were falsely inflated due to Plaintiff's impermissible price

manipulation and price gouging.

**FAC ¶ 91:**

The parties agreed on the balances of the amounts due and owing for said goods and services. US Foods rendered invoices to Defendant Bishok for the delivery of said goods and services to which Defendant Bishok did not object.

**ANSWER:**

Denied. The invoices were falsely inflated due to Plaintiff's impermissible price manipulation and price gouging. Defendants complained about the price gouging and price manipulation.

**FAC ¶ 92:**

Guarantor Bish executed the Bish Guaranty, unconditionally guaranteeing all of Defendant Bishok's payment obligations to US Foods. (Exhibit B1).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 93:**

The Bish Guaranty imposes liability on Guarantor Bish for Defendant T.G. Holdings' payment obligations under the Note. (Exhibit B3).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 94:**

Guarantor Bish's obligations include, but are not limited to, payment of the debt, interest and the costs of enforcement of Defendant Bishok's obligations, including reasonable attorneys' fees. (Exhibit B1).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 95:**

The Bish Guaranty further provides that US Foods has the right to proceed directly against Guarantor Bish to collect and recover the full amount of the indebtedness. (Exhibits B1).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 96:**

Defendants Bishok and Bish owe US Foods $296,102.15, plus interest, costs and fees. (See Exhibit B1; See Exhibit C1).

**ANSWER:**

Admitted only that not all sums billed have been paid. Otherwise denied. Payments have been made since the FAC was filed. Additionally, the prices charged were impermissibly inflated by price manipulation and price gouging.

**FAC ¶ 97:**

US Foods incorporates and re-alleges each and every one of the allegations set forth in paragraphs 1 through 33 above as though fully set forth herein.

**ANSWER:**

Defendants incorporate by reference their Defenses and all prior Answers.

**FAC ¶ 98:**

Before the institution of this action, US Foods and Defendant MRCH had an on-going business relationship in which Defendant MRCH ordered goods and services from US Foods, for a period of time.

**ANSWER:**

Admitted.

**FAC ¶ 99:**

US Foods supplied goods and services to Defendant MRCH as evidenced by the invoices US Foods submitted to Defendant MRCH for the goods and services supplied. The invoices were delivered to Defendant MRCH in accordance with US Foods' normal accounting procedures.

**ANSWER:**

Denied. The invoices were falsely inflated due to Plaintiff's impermissible price manipulation and price gouging.

**FAC ¶ 100:**

The parties agreed on the balances of the amounts due and owing for said goods and services. US Foods rendered invoices to Defendant MRCH for the delivery of said goods and services to which Defendant MRCH did not object.

**ANSWER:**

Denied. The invoices were falsely inflated due to Plaintiff's impermissible price manipulation and price gouging. Defendants complained about the price gouging and price manipulation.

**FAC ¶ 101:**

Guarantors Bish and Shok executed the Bish-Shok Guaranty, unconditionally guaranteeing all of Defendant MRCH's payment obligations to US Foods. (Exhibit B2).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 102:**

The Bish-Shok Guaranty imposes liability on Guarantors Bish and Shok for Defendant MRCH's payment obligations under the Note. (Exhibit B2).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 103:**

Guarantors Bish and Shok's obligations include, but are not limited to, payment of the debt, interest and the costs of enforcement of Defendant MRCH's obligations respectively, including reasonable attorneys' fees. (Exhibit B2).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the

particular company whose application was signed.

**FAC ¶ 104:**

The Bish-Shok Guaranty further provides that US Foods has the right to proceed directly against Guarantors Bish and Shok to collect and recover the full amount of the indebtedness. (Exhibits B2).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content.

Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and

future contracts, but only to the original contract and invoices related thereto for the particular

company whose application was signed.

**FAC ¶ 105:**

Defendants owe US Foods $211,212.62, plus interest, costs and fees. (See Exhibit B2; See Exhibit C2).

**ANSWER:**

Admitted only that not all sums billed have been paid. Otherwise denied. Payments have

been made since the FAC was filed. Additionally, the prices charged were impermissibly

inflated by price manipulation and price gouging.

**FAC ¶ 106:**

US Foods incorporates and re-alleges each and every one of the allegations set forth in paragraphs 1 through 33 above as though fully set forth herein.

**ANSWER:**

Defendants incorporate by reference their Defenses and their prior Answers.

**FAC ¶ 107:**

Before the institution of this action, US Foods and Defendant T.G. Holdings had an on-going business relationship in which Defendant T.G. Holdings ordered goods and services from US Foods, for a period of time.

**ANSWER:**

Admitted.

**FAC ¶ 108:**

    **US Foods supplied goods and services to Defendant T.G. Holdings as evidenced by the invoices US Foods submitted to Defendant T.G. Holdings for the goods and services supplied. The invoices were delivered to Defendant T.G. Holdings in accordance with US Foods' normal accounting procedures.**

**ANSWER:**

    Denied.  The invoices were falsely inflated due to Plaintiff's impermissible price

manipulation and price gouging.

**FAC ¶ 109:**

    **The parties agreed on the balances of the amounts due and owing for said goods and services. US Foods rendered invoices to Defendant T.G. Holdings for the delivery of said goods and services to which Defendant T.G. Holdings did not object.**

**ANSWER:**

    Denied.  The invoices were falsely inflated due to Plaintiff's impermissible price

manipulation and price gouging. Defendants complained about the price gouging and price

manipulation.

**FAC ¶ 110:**

    **Guarantor Bish executed the Bish 2 Guaranty, unconditionally guaranteeing all of Defendant T.G. Holdings' payment obligations to US Foods. (Exhibit B3).**

**ANSWER:**

    Admitted only that the guaranty was signed and is the best evidence of its own content.

Otherwise denied.  Defendants did not understand the guaranty to apply to promissory notes

and future contracts, but only to the original contract and invoices related thereto for the

particular company whose application was signed.

**FAC ¶ 111:**

The Bish 2 Guaranty imposes liability on Guarantor Bish for Defendant T.G. Holdings' payment obligations under the Note. (Exhibit B3).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 112:**

Guarantor Bish's obligations include, but are not limited to, payment of the debt, interest and the costs of enforcement of Defendant T.G. Holdings' obligations, including reasonable attorneys' fees. (Exhibit B3).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 113:**

The Bish 2 Guaranty further provides that US Foods has the right to proceed directly against Guarantor Bish to collect and recover the full amount of the indebtedness. (Exhibits B3).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related

thereto for the particular company whose application was signed.

## FAC ¶ 114:

Defendant T.G. Holdings and Bish owe US Foods $295,816.64, plus interest, costs and fees. (See Exhibit B3; See Exhibit C3).

## ANSWER:

Admitted only that not all sums billed have been paid. Otherwise denied. Payments have been made since the FAC was filed. Additionally, the prices charged were impermissibly inflated by price manipulation and price gouging.

## FAC ¶ 115:

US Foods incorporates and re-alleges each and every one of the allegations set forth in paragraphs 1 through 33 above as though fully set forth herein.

## ANSWER:

Defendants incorporate by reference their Defenses and their prior Answers.

## FAC ¶ 116:

At Defendant Bishok's request, US Foods supplied goods and services to Defendant Bishok for various food and food related items.

## ANSWER:

Admitted.

## FAC ¶ 117:

Defendant Bishok accepted delivery of the goods and services from US Foods, without objection, and owes US Foods for the unpaid balance of said deliveries.

## ANSWER:

Denied. The invoices were falsely inflated due to Plaintiff's impermissible price manipulation and price gouging. Defendants complained about the price gouging and price manipulation.

**FAC ¶ 118:**

The goods sold include food products which were sold at various prices, all of which are evidenced on invoices provided to Defendant Bishok by US Foods. (See Exhibit C1).

**ANSWER:**

Admitted. However, the invoices were falsely inflated due to Plaintiff's impermissible price manipulation and price gouging. Defendants complained about the price gouging and price manipulation.

**FAC ¶ 119:**

Guarantor Bish executed the Bish Guaranty, unconditionally guaranteeing all of Defendant Bishok's payment obligations to US Foods. (Exhibit B1).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 120:**

The Bish Guaranty imposes liability on Guarantor Bish for Defendant Bishok's payment obligations under the Note. (Exhibit B1).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 121:**

**Guarantor Bish's obligations include, but are not limited to, payment of the debt, interest and the costs of enforcement of Defendant Bishok's obligations, including reasonable attorneys' fees. (Exhibit B1).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 122:**

**The Bish Guaranty further provides that US Foods has the right to proceed directly against Guarantor Bish to collect and recover the full amount of the indebtedness. (Exhibits B1).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 123:**

**Defendants Bishok and Bish owe US Foods $296,102.15 plus interest, costs and fees. (See Exhibit B2; See Exhibit C2).**

**ANSWER:**

Admitted only that not all sums billed have been paid. Otherwise denied. Payments have been made since the FAC was filed. Additionally, the prices charged were impermissibly inflated by price manipulation and price gouging.

**FAC ¶ 124:**

US Foods incorporates and re-alleges each and every one of the allegations set forth in paragraphs 1 through 33 above as though fully set forth herein.

**ANSWER:**

Defendants incorporate by reference their Defenses and their prior Answers.

**FAC ¶ 125:**

At Defendant MRCH's request, US Foods supplied goods and services to Defendant MRCH for various food and food related items.

**ANSWER:**

Admitted.

**FAC ¶ 126:**

Defendant MRCH accepted delivery of the goods and services from US Foods, without objection, and owes US Foods for the unpaid balance of said deliveries.

**ANSWER:**

Denied. The invoices were falsely inflated due to Plaintiff's impermissible price manipulation and price gouging. Defendants complained about the price gouging and price manipulation.

**FAC ¶ 127:**

The goods sold include food products which were sold at various prices, all of which are evidenced on invoices provided to Defendant MRCH by US Foods. (See Exhibit C2).

**ANSWER:**

Admitted. However, The invoices were falsely inflated due to Plaintiff's impermissible price manipulation and price gouging. Defendants complained about the price gouging and

price manipulation.

**FAC ¶ 128:**

**Guarantors Bish and Shok executed the Bish-Shok Guaranty, unconditionally guaranteeing all of Defendant MRCH's payment obligations to US Foods. (Exhibit B2).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own

content. Otherwise denied. Defendants did not understand the guaranty to apply to

promissory notes and future contracts, but only to the original contract and invoices related

thereto for the particular company whose application was signed.

**FAC ¶ 129:**

**The Bish-Shok Guaranty imposes liability on Guarantors Bish and Shok for Defendant MRCH's payment obligations under the Note. (Exhibit B2).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own

content. Otherwise denied. Defendants did not understand the guaranty to apply to

promissory notes and future contracts, but only to the original contract and invoices related

thereto for the particular company whose application was signed.

**FAC ¶ 130:**

**Guarantors Bish and Shok's obligations include, but are not limited to, payment of the debt, interest and the costs of enforcement of Defendant MRCH's obligations respectively, including reasonable attorneys' fees. (Exhibit B2).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own

content. Otherwise denied. Defendants did not understand the guaranty to apply to

promissory notes and future contracts, but only to the original contract and invoices related

thereto for the particular company whose application was signed.

**FAC ¶ 131:**

      **The Bish-Shok Guaranty further provides that US Foods has the right to proceed directly against Guarantors Bish and Shok to collect and recover the full amount of the indebtedness. (Exhibits B2).**

**ANSWER:**

      Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 132:**

      **Defendants MRCH, Bish and Shok owe US Foods $211,212.62 plus interest, costs and fees. (<u>See</u> Exhibit C2).**

**ANSWER:**

      Admitted only that not all sums billed have been paid. Otherwise denied. Payments have been made since the FAC was filed. Additionally, the prices charged were impermissibly inflated by price manipulation and price gouging.

**FAC ¶ 133:**

      **US Foods incorporates and re-alleges each and every one of the allegations set forth in paragraphs 1 through 33 above as though fully set forth herein.**

**ANSWER:**

      Defendants incorporate by reference their Defenses and their prior Answers.

**FAC ¶ 134:**

      **At Defendant T.G. Holdings' request, US Foods supplied goods and services to Defendant T.G. Holdings for various food and food related items.**

**ANSWER:**

Admitted.

**FAC ¶ 135:**

**Defendant T.G. Holdings accepted delivery of the goods and services from US Foods, without objection, and owes US Foods for the unpaid balance of said deliveries.**

**ANSWER:**

Denied.  The invoices were falsely inflated due to Plaintiff's impermissible price manipulation and price gouging. Defendants complained about the price gouging and price manipulation.

**FAC ¶ 136:**

**The goods sold include food products which were sold at various prices, all of which are evidenced on invoices provided to Defendant T.G. Holdings by US Foods.(See Exhibit C3).**

**ANSWER:**

Admitted.  However, the invoices were falsely inflated due to Plaintiff's impermissible price manipulation and price gouging. Defendants complained about the price gouging and price manipulation.

**FAC ¶ 137:**

**Guarantor Bish executed the Bish 2 Guaranty, unconditionally guaranteeing all of Defendant T.G. Holdings' payment obligations to US Foods. (Exhibit B3).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content.  Otherwise denied.  Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 138:**

The Bish 2 Guaranty imposes liability on Guarantor Bish for Defendant T.G. Holdings' payment obligations under the Note. (Exhibit B3).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 139:**

Guarantor Bish's obligations include, but are not limited to, payment of the debt, interest and the costs of enforcement of Defendant T.G. Holdings' obligations, including reasonable attorneys' fees. (Exhibit B3).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 140:**

The Bish 2 Guaranty further provides that US Foods has the right to proceed directly against Guarantor Bish to collect and recover the full amount of the indebtedness. (Exhibits B3).

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 141:**

Defendant T.G. Holding and Bish owe US Foods $295,816.64 plus interest, costs and fees. (See Exhibit B3; See Exhibit C3).

**ANSWER:**

Admitted only that not all sums billed have been paid. Otherwise denied. Payments

have been made since the FAC was filed. Additionally, the prices charged were

impermissibly inflated by price manipulation and price gouging.

**FAC ¶ 142:**

US Foods incorporates and re-alleges each and every one of the allegations set forth in paragraphs 1 through 33 above as though fully set forth herein.

**ANSWER:**

Defendants incorporate by reference their Defenses and their prior Answers.

**FAC ¶ 142:**

US Foods supplied goods and services to Defendant Bishok as evidenced by the invoices US Foods submitted to Defendant Bishok for the goods and services supplied. (Exhibit C1).

**ANSWER:**

Admitted. However, the invoices were inflated by impermissible price manipulation

and price gouging.

**FAC ¶ 143:**

US Foods supplied goods and services to Defendant Bishok as evidenced by the invoices US Foods submitted to Defendant Bishok for the goods and services supplied. (Exhibit C1).

**ANSWER:**

Admitted. However, the invoices were inflated by impermissible price manipulation

and price gouging.

**FAC ¶ 144:**

    **Defendant Bishok accepted delivery of the goods and services from US Foods.**

**ANSWER:**

    Admitted. However, Defendants challenged the impermissibly inflated prices, price gouging and price manipulation.

**FAC ¶ 145:**

    **Defendant Bishok unjustifiably failed to pay US Foods the outstanding balance owed.**

**ANSWER:**

    Denied. Defendants challenged the impermissibly inflated prices, price gouging and price manipulation.

**FAC ¶ 146:**

    **Upon information and belief, Defendant Bishok used, sold, or otherwise benefitted from the goods without paying US Foods.**

**ANSWER:**

    Admitted that Bishok benefitted from the goods. Admitted that not all amounts billed have been paid. Denied that all amounts billed are due. Otherwise denied. Defendants hope and plan to pay in full pursuant to a revised payment plan.

**FAC ¶ 147:**

    **Guarantor Bish executed the Bish Guaranty, unconditionally guaranteeing all of Defendant Bishok's payment obligations to US Foods. (Exhibit B1).**

**ANSWER:**

    Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to

promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 148:**

**The Bish Guaranty imposes liability on Guarantors Bish for Defendant Bishok's payment obligations under the Note. (Exhibit B1).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 149:**

**Guarantor Bish's obligations include, but are not limited to, payment of the debt, interest and the costs of enforcement of Defendant Bishok's obligations, including reasonable attorneys' fees. (Exhibit B1).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 150:**

**The Bish Guaranty further provides that US Foods has the right to proceed directly against Guarantor Bish to collect and recover the full amount of the indebtedness. (Exhibits B1).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to

promissory notes and future contracts, but only to the original contract and invoices related

thereto for the particular company whose application was signed.

**FAC ¶ 151:**

      **The total amount currently due and owing from Defendants Bishok and Bish is $296,102.15, exclusive of interest, costs and fees. (Exhibit C1).**

**ANSWER:**

      Admitted only that not all sums billed have been paid.  Otherwise denied. Payments

have been made since the FAC was filed.  Additionally, the prices charged were impermissibly

inflated by price manipulation and price gouging.

**FAC ¶ 152:**

      **US Foods incorporates and re-alleges each and every one of the allegations set forth in paragraphs 1 through 33 above as though fully set forth herein.**

**ANSWER:**

      Defendants incorporate by reference their Defenses and their prior Answers.

**FAC ¶ 153:**

      **US Foods supplied goods and services to Defendant MRCH as evidenced by the invoices US Foods submitted to Defendant MRCH for the goods and services supplied. (Exhibit C2).**

**ANSWER:**

      Admitted.  However, the invoices were inflated by impermissible price manipulation

and price gouging.

**FAC ¶ 154:**

      **Defendant MRCH accepted delivery of the goods and services from US Foods.**

**ANSWER:**

      Admitted.   However, Defendants challenged the impermissibly inflated prices, price

gouging and price manipulation.

**FAC ¶ 155:**

     **Defendant MRCH unjustifiably failed to pay US Foods the outstanding balance owed.**

**ANSWER:**

     Denied.   Defendants challenged the impermissibly inflated prices, price gouging and price manipulation.

**FAC ¶ 156:**

     **Upon information and belief, Defendant MRCH used, sold, or otherwise benefitted from the goods without paying US Foods.**

**ANSWER:**

     Admitted that MRCH benefitted from the goods.  Admitted that not all amounts billed have been paid.  Denied that all amounts billed are due.  Otherwise denied.  Defendants hope and plan to pay in full pursuant to a revised payment plan.

**FAC ¶ 157:**

     **Guarantors Bish and Shok executed the Bish-Shok Guaranty,  unconditionally guaranteeing all of Defendant MRCH's payment obligations to US Foods. (Exhibit A2).**

**ANSWER:**

     Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied.  Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 158:**

     **The Bish-Shok Guaranty imposes liability on Guarantors Bish and Shok for Defendant MRCH's payment obligations under the Note. (Exhibit B2).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 159:**

**Guarantors Bish and Shok's obligations include, but are not limited to, payment of the debt, interest and the costs of enforcement of Defendant MRCH's obligations respectively, including reasonable attorneys' fees. (Exhibit B2).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 160:**

**The Bish-Shok Guaranty further provides that US Foods has the right to proceed directly against Guarantors Bish and Shok to collect and recover the full amount of the indebtedness. (Exhibits B2).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 161:**

**The total amount currently due and owing from Defendants MRCH, Bish and Shok is $211,212.62, exclusive of interest, costs and fees. (See Exhibit B2; See Exhibit C2).**

**ANSWER:**

Admitted only that not all sums billed have been paid. Otherwise denied. Payments

have been made since the FAC was filed. Additionally, the prices charged were

impermissibly inflated by price manipulation and price gouging.

**FAC ¶ 162:**

**US Foods incorporates and re-alleges each and every one of the allegations set
forth in paragraphs 1 through 33 above as though fully set forth herein.**

**ANSWER:**

Defendants incorporate by reference their Defenses and their prior Answers.

**FAC ¶ 163:**

**US Foods supplied goods and services to Defendant T.G. Holdings as evidenced by
the invoices US Foods submitted to Defendant T.G. Holdings for the goods and services
supplied. (Exhibit C3).**

**ANSWER:**

Admitted. However, the invoices were inflated by impermissible price manipulation

and price gouging.

**FAC ¶ 164:**

**Defendant T.G. Holdings accepted delivery of the goods and services from US
Foods.**

**ANSWER:**

Admitted. However, Defendants challenged the impermissibly inflated prices, price

gouging and price manipulation.

**FAC ¶ 165:**

**Defendant T.G. Holdings unjustifiably failed to pay US Foods the outstanding
balance owed.**

**ANSWER:**

Admitted only that not all amounts billed have been paid. The prices and charges were challenged and objected to on the basis of impermissible price gouging and price manipulation. In addition, payments have been made since the FAC was filed. Defendants hope and plan to pay the full balance actually due under a revised payment plan.

**FAC ¶ 166:**

**Upon information and belief, Defendant T.G. Holdings used, sold, or otherwise benefitted from the goods without paying US Foods.**

**ANSWER:**

Admitted that TG Holdings benefitted from the goods. Admitted that not all amounts billed have been paid. Denied that all amounts billed are due. Otherwise denied. Defendants hope and plan to pay in full pursuant to a revised payment plan.

**FAC ¶ 167:**

**Guarantor Bish executed the Bish 2 Guaranty, unconditionally guaranteeing all of Defendant T.G. Holdings' payment obligations to US Foods. (Exhibit B3).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 168:**

**The Bish 2 Guaranty imposes liability on Guarantor Bish for Defendant T.G. Holdings' payment obligations under the Note. (Exhibit B3).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content.

49

Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 169:**

**Guarantor Bish's obligations include, but are not limited to, payment of the debt, interest and the costs of enforcement of Defendant T.G. Holdings' obligations, including reasonable attorneys' fees. (Exhibit B3).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 170:**

**The Bish 2 Guaranty further provides that US Foods has the right to proceed directly against Guarantor Bish to collect and recover the full amount of the indebtedness. (Exhibits B3).**

**ANSWER:**

Admitted only that the guaranty was signed and is the best evidence of its own content. Otherwise denied. Defendants did not understand the guaranty to apply to promissory notes and future contracts, but only to the original contract and invoices related thereto for the particular company whose application was signed.

**FAC ¶ 171:**

**The total amount currently due and owing from Defendant T.G. Holdings is $295,816.64, exclusive of interest, costs and fees. (Exhibit C3).**

**ANSWER:**

Admitted only that not all sums billed have been paid. Otherwise denied. Payments have been made since the FAC was filed. Additionally, the prices charged were impermissibly inflated by price manipulation and price gouging.

**PRAYER FOR RELIEF**:

WHEREFORE, Plaintiff respectfully requests:

A.  Judgments in favor of Plaintiff and against Defendants Bishok, MRCH and T.G. Holdings for breach of the Note, in an amount to be determined at trial;

B.  A judgment in favor of Plaintiff and against Guarantors on Plaintiff's claims for breach of guaranty, in an amount to be determined at trial;

C.  In the alternative, judgments in favor of Plaintiff and against Defendants on Plaintiff's claims for statement on account, in an amount to be determined at trial.

D.  In the alternative, judgments in favor of Plaintiff and against Defendants on Plaintiff's claims for goods sold, in an amount to be determined at trial.

E.  In the alternative, judgments in favor of Plaintiff and against Defendants on Plaintiff's claims for unjust enrichment, in an amount to be determined at trial.

F.  Judgments in favor of Plaintiff and against Defendants for Plaintiff's reasonable attorneys' fees and litigation expenses; and

G.  That Plaintiff be granted such other and further relief as the Court shall deem just and proper.

**ANSWER:**

Admitted only that Plaintiff seeks the specified relief. Denied that Plaintiff is entitled to the specified relief.

## **DEFENDANTS' DEFENSES**

1.  **Failure To Plead or Establish Subject Matter Jurisdiction.** Plaintiff has failed to identify or plead all of the members of the LLC Defendants or their residency or citizenship. Therefore, Plaintiff has failed to sufficiently plead or establish diversity jurisdiction or subject matter jurisdiction.

2.  **Failure To State a Claim/Unavailability of Claims for Unjust Enrichment, Statement on Account, Goods Sold, and other Quasi-Contract Claims.** The pleading and existence of express oral and written contracts between the parties bars Plaintiff's claims for

Unjust Enrichment, Statement on Account, Goods Sold, or other quasi-contract counts. Plaintiff incorporating those express contracts by reference into its quasi-contract counts means that Plaintiff has failed to state claims for Unjust Enrichment, Statement on Account, Goods Sold, or other quasi-contract counts.

3. **Waiver.** Plaintiff waived the prompt payment requirements of the parties' agreements by letting Defendants regularly pay late and in installments before Defendants discovered the price-manipulation and price gouging and switched their business to other providers with prices lower than the supposedly preferential prices promised to Defendants.

4. **Prior Material Breach**. The defendant LLCs were operating on cost-plus contracts and were supposed to receive preferential sub-distributor pricing with low mark-ups. However, Plaintiff fraudulently and in material breach of the implied covenant of good faith and fair dealing engaged in price gouging and price manipulation by charging Defendants not the actual purchase prices and costs but rather the highest possible purchase prices and costs for the prior period. As a result, Defendants were overcharged at least hundreds of thousands of dollars in inflated prices which were higher than the normal distributor prices charged by other distributors and competitors in Plaintiff's position. Plaintiff's personnel showed Defendants e-mails showing that this problem and practice had been discovered and reported within Plaintiff as being unfair to customers and impermissible. However, instead of crediting Defendants for the overcharges, Plaintiff threatened to sue Defendants for the full inflated amount, to seize Defendants' equipment and assets, and to immediately cut off Defendants' food supplies before a busy weekend, causing major disruption to Defendants' business. In addition, Plaintiff notified and threatened family members and former business associates who were not associated with Defendants and had not signed guarantees to embarrass and stir up trouble for Defendants by

aggravating past divisions and disputes to pressure Defendants into signing the Promissory Note. This had the intended effect of aggravating those past divisions and disputes and giving rise to rumors in the relevant communities that Defendants were on the verge of closing their restaurants, which exerted enormous pressure on Defendants. This conduct on the part of Plaintiff constituted a prior material breach of the parties' agreements (especially the implied covenant of good faith and fair dealing) discharging Defendants from their obligations. It also constituted economic duress with voids and invalidates the Note and the releases therein. At the very least, Defendants are entitled to set off and recoup the overcharges and other damages caused to Defendants as the result of Plaintiff's overcharges, price manipulation, price gouging, and other breaches of the implied covenant of good faith and fair dealing.

5.  **Set-Off and Recoupment.**

Under the facts stated in Defense No. 4, Defendants are entitled to set off and recoup the overcharges and other damages caused to Defendants as the result of Plaintiff's overcharges, price manipulation, price gouging, improper publication of the parties' disputes, and other breaches of the implied covenant of good faith and fair dealing.

6.  **Economic Duress.**  Under the facts stated in Defense No. 4, Plaintiff's conduct constituted economic duress with voids and invalidates the Note and the releases therein, which Defendants signed only because they were being subjected to economic duress.

Respectfully Submitted This 4th Day of December, 2017


By: /s/Adam Matheson
         Local Counsel for Defendants

Carmen D. Caruso, Esquire (IL SBN 6189462)
Adam Matheson, Esquire (IL SBN 6325029)
Local Counsel for Defendants

CARMEN D. CARUSO LAW FIRM
77 West Washington Street
Suite 1900
Chicago, Illinois 60602
Tele.:   (312) 626-1160
Fax:     (312) 276-8646
Email:cdc@cdcaruso.com
        acm@cdcaruso.com


Michael C. Whitticar, Esq. (VSB No. 32968)
Motion *Pro Hac Vice* Anticipated
NOVA IP Law, PLLC
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Phone: (571) 386-2980
Fax: (855) 295-0740
Email: mikew@novaiplaw.com


*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th Day of December, 2017 a copy of the foregoing Answer

was filed through the court's ECF/ECM system and thereby served on the following:


Maria Z. Vathis, Illinois Bar # 62766866
Demetria L. Hamilton, Illinois Bar #6324005
BRYAN CAVE LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
(312) 602-5000 (telephone)
(312) 602-5050 (facsimile)
Leslie.Bayles@bryancave.com
Maria.Vathis@bryancave.com
Demetria.Hamilton@bryancave.com
*Attorneys for Plaintiff*


       /s/Adam Matheson
       Adam Matheson